NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1116
_____

SHENG TONG WU,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-683-469)
U.S. Immigration Judge:  Honorable Susan G. Roy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 23, 2011
Before:  SCIRICA, FISHER and ALDISERT, <u>Circuit Judges</u>

(Filed: March 24, 2011)
_____

OPINION OF THE COURT
_____

<u>PER CURIAM</u>.

Sheng Tong Wu, a native and citizen of China, seeks review of a Board of

Immigration Appeals (BIA) decision that upheld the Immigration Judge's (IJ) denial of

asylum, statutory withholding of removal, and relief under the Convention Against

Torture (CAT).  For the reasons that follow, we will deny the petition for review.

In September 2005, Wu entered the United States at the U.S.–Mexico border without being admitted or paroled by immigration authorities. He was eventually issued a notice to appear that charged him as being removable under 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled . . . is inadmissible."). Wu conceded removability. He attempted to block his removal by claiming a fear of persecution and torture should he be removed to China.

At a hearing before the IJ in Newark, New Jersey, Wu testified that he has a wife and child, both of whom remain in China. Wu and his wife would like to have more children. Wu believes that if they have a second child in China, "one of us will be taken for sterilization." (JA 136.) As further punishment for having a second child, Wu believes he would be fined and put in jail; the fine would be somewhere between three and ten years' salary. Wu based the range of the fine on information he read in a Chinese newspaper. During cross-examination by Government counsel, Wu testified that his wife underwent a forced abortion in the year 2000, and that an IUD was inserted thereafter. During questioning by the IJ, Wu testified that, if removed to China, he would be fined one to five years' salary for having been smuggled out of the country. Wu based that testimony on village gossip concerning a removed alien named Wu Zheng Wang.

The IJ denied all requested relief. Specifically, the IJ determined that, under In re J-S-, 24 I. & N. Dec. 520 (A.G. 2008), Wu was not eligible for asylum based solely on his wife's forced abortion. The IJ determined that Wu failed to establish a well-founded

fear that he would be sterilized if removed, reasoning that if "the Government of China had the inclination to sterilize the respondent, it could have easily done so while the respondent remained in China for five years after they had violated the family planning policy, and [the Government of China] did not choose to do so." (JA 66.) The IJ also determined that Wu's fear of being fined or detained for violation of China's coercive family planning policy was not well-founded, reasoning that Wu "was not fined previously, and so therefore it is speculative at best for him to assume that he would be subject to such a draconian fine as three to 10 years' salary should he be returned to China and violate the family planning policies." (JA 69.)

Concerning Wu's fear of a fine for having been smuggled out of the country, the IJ stated that, "[e]ven assuming arguendo that the respondent would be fined one to three[] years['] salary for violation of the Chinese illegal departure laws, it is not on account of one of the five enumerated grounds." (JA 73.) Also, the IJ determined that Wu failed to meet his burden of demonstrating eligibility for CAT relief. Wu's appeal was dismissed, and the BIA ordered him removed to China. This petition for review followed.

## II.

We have jurisdiction under 8 U.S.C. §1252(a)(1). When the BIA issues its own opinion, we review the BIA's disposition but look to an IJ's findings of fact or rulings on particular claims when the BIA expressly defers to them. See Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). "We review the facts upon which the BIA's decision rests to ensure that they are supported by substantial evidence from the record considered as a

3

whole, and we will reverse based on a factual error only if any reasonable fact-finder would be 'compelled to conclude otherwise.'" Id. (internal citations omitted). The BIA's legal conclusions, by contrast, are reviewed de novo. Id.

III.

We have reviewed the claims of error raised by Wu in his opening brief and find them to be without merit. Only a few of those claims require further discussion.

Wu claims that substantial evidence does not support the BIA's finding that Wu and his wife violated China's coercive family planning policy. He states that, because his "wife's second pregnancy was accidental[, it was] not considered a violation." However, there is no evidence in the record to support Wu's argument that his wife was subjected to a forced abortion even though she did not violate the family planning policy, and in fact the page of the joint appendix Wu cites to support his argument actually undermines it. (JA 624) (Wu's affidavit: "I have been persecuted by the Chinese government due to our violation of the family planning policy.") Wu also claims that the BIA "misconstrue[d]" his persecution claim as one alleging a fear of sterilization based on the prior violation of the family planning policy. The BIA did no such thing. (JA 4) (BIA decision: "The respondent further argues that he will suffer sterilization or economic persecution *if he has more children*.") (emphasis added).

The BIA did not err in determining as a matter of law that "any past persecution suffered by the respondent's spouse in China, without evidence of harm due to resistance offered by the respondent, does not constitute a proper basis for relief or protection for

4

the respondent." (JA 3); see Lin-Zheng v. Att'y Gen., 557 F.3d 147, 156 (3d Cir. 2009) (en banc) ("[T]here is no room for us to conclude that Congress intended to extend refugee status to anyone other than *the individual who* has either been forced to submit to an involuntary abortion or sterilization . . . ."). In addition, substantial evidence supports the IJ's finding, to which the BIA deferred, that Wu failed to offer evidence of acts that could constitute "other resistance" to China's family planning policy. See Lin-Zheng, 557 F.3d at 157.

Substantial evidence supports the BIA's determination that Wu lacks a well-founded fear of sterilization upon repatriation to China. A "well-founded fear" has subjective and objective components: "the alien must entertain a subjective apprehension that persecution will follow repatriation, and that apprehension must be objectively reasonable in light of the circumstances of the alien's case." Huang, 620 F.3d at 381. The BIA correctly determined that Wu's fear was not objectively reasonable, given that Wu "was not sterilized in the past for violating the family planning policy," and the fact that "[h]is wife has not been sterilized" on account of that violation. (JA 4.)

Finally, substantial evidence supports the BIA's determination that Wu lacks a well-founded fear of economic persecution based on a prospective violation of China's family planning policy. As we have explained, the term persecution includes "economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). In Li v. Attorney General, 400 F.3d 157 (3d Cir. 2005), we concluded that,

5

[i]n the aggregate, a fine of more than a year and a half's salary; blacklisting from any government employment and from most other forms of legitimate employment; the loss of health benefits, school tuition, and food rations; and the confiscation of household furniture and appliances from a relatively poor family constitute deliberate imposition of severe economic disadvantage which could threaten [Li's] family's freedom if not their lives.

Id. at 169.

Here, Wu contends that "[e]vidence, including Mr. Wu's past fines, shows that Mr. Wu will face onerous fines, either to compel him to be sterilized or in addition to sterilization." We have searched the record in vain for evidence of Wu's alleged "past fines." And for all Wu's testimony about prospective fines amounting to some multiple of his salary (purportedly as a construction worker in Lianjiang, JA 617), there is no evidence in the record indicating what that salary is or how Wu's family would be disadvantaged by its absence. Cf. Liao v. U.S. Dep't of Justice, 293 F.3d 61, 70 (2d Cir. 2002) (alien failed to prove past economic persecution, where "[n]o testimony or other evidence was presented regarding petitioner's income in China, his net worth at the time of the fines, or any other facts that would make it possible for us to evaluate his personal financial circumstances in relation to the fines."). Furthermore, we agree with the BIA that, "[u]nlike the applicant in [Li] . . . there is no indication that [Wu] would face the loss of his health benefits, or other property, and he has not shown that he would have difficulty finding employment in China." (JA 4.)

Accordingly, Wu's petition for review will be denied.